Mr. Wayland? Yes, Your Honor. Good morning. Good morning. My name is Land Wayland. I am the attorney for Mrs. Chin. Good morning, gentlemen. There are several issues in this case that I would like to emphasize. The first one is that, having taken seven months to write his decision, the immigration judge does not discuss any claim of abortion at all at any point. In fact, he apparently did not understand that this is what the case is all about because his final conclusion is only that Mrs. Chin did not have any fear of future persecution. What he ignores is that if she had in fact suffered an involuntary abortion, that raises a presumption that she will suffer future persecution. He had to deal with that issue and he was just totally silent regarding the abortions. At one point during the testimony, in fact, he participated in asking her questions about how she had her second abortion and he is the one who suggested that she had the shot that induced the abortion and caused her to deliver a stillborn child some 12 hours later. He was part of that discussion and yet whenever you come to the end of the case, it's like none of that ever happened. And we have no idea what the judge thought. The reason that he took that position is that he discredited her credibility for three discrete reasons. So regarding the issue of credibility, when you read the record, you find that he was not specific over and over and over again. For example, he says that she had a problem with general demeanor. He doesn't discuss anything whatsoever about her demeanor. Did it identify the fact that she had some inconsistencies about the second abortion? Specifically about when she discovered she was pregnant? Yes. That's pretty central to the claim, isn't it? Yes, it is, Your Honor. And if you read through the transcript, what you will find is that she never, she never discussed October and testing. It was always the judge. The testimony started with me asking her when she first discovered she was pregnant. She said she discovered that she was pregnant in October. The judge wanted to know when she stopped taking birth control pills. And she said about a month before, the judge says, then I'm going to guess that this was in September. I then came back and asked... Was the difference between October 1985 and February 1986. Am I wrong about that? No, you're not. But she said that she was pregnant in October. Then the judge came along later and asked her, in fact... You just finished telling us the petitioner, Chen, never mentioned October 1985. That was only the IJ. Now you're saying the opposite. You're saying that she mentioned October 1985 and the IJ mentioned February 1986? No. She said that she was pregnant in October and that she had her first test in February. The judge said that he concluded from that that she had stopped taking the pill in September. Then later, he started saying, the judge started saying that she stopped taking the pill in October. Then he said, so you were seven months pregnant in February. And she tried to correct him and he shouted her down in the courtroom and said, excuse me, ma'am, I'm talking here. I'm trying to get some information. I'm trying to get some things straight. I do not want you talking. Now, if she's not going to talk and she's trying to correct him, who's he going to get his information from? Himself? And that's what happened. Because he first started saying, the judge said that she stopped taking the pill in September. Then the judge said twice more in that same statement, so you stopped taking the pill in October. Then later, he said. Do you have record sites on this? The record site on that? Can you give us kind of a bracket of where this is? Yes. In the, I'm sorry. It's in the judge's, the record of proceedings down below, pages, this entire discussion happened between pages 48 and page 60 down below. Now, when you say 48 to 60, is that of the transcript of the hearing? That's the transcript of the hearing. I do have this. We can find it. It said 48 through 60. Right. Right? Okay. And so it was on page 52. Ma'am, in February, you said you were about seven months pregnant. She says, no, I wasn't seven months pregnant. He says, I'm confused, because in October, you stopped taking the pill. She's tried to answer him. He shouted her down and said, October's, do not interrupt me. I'm trying to get some information straight here. Don't talk. And then he said again, October's when you stopped taking the pill. And she said, no, October's when I was pregnant. And she said, I went to the hospital and I was three months pregnant. Every time October and testing is mentioned in this transcript, it's mentioned by the judge. And when she tried to correct him, he would not listen. Finally, toward the end, he said, I'm confused. Counsel, why don't you go through the questions again? So I went through the questions again. This time, we went through the entire sequence of events. And the sequence of events was exactly the way he spelled it out in his decision. He didn't add anything. He didn't subtract anything. He didn't say he was confused about anything. He didn't say there were any conflicting stories. He didn't say there were two different testimonies here. He understood it. What we have here is, in several places, bad questioning being going on. But we also have the judge, for unknown reasons, within pages of each other, going from saying she stopped taking the pill in September to October, that she was pregnant in February. When she's tried to interrupt him, he said, no, I don't want to listen to what you're having me say. And then finally, at one point, the judge was testifying, or was saying, and this is on the record of proceedings, page 99. The judge said that October, she stopped taking the pill. She said, when I had my exam, I was three months pregnant. There's no contradiction there. The judge again said, you stopped taking the pill in October. And the trial attorney, it was just too much for him. He stepped in and said, judge, that's not the testimony. The trial attorney said that. That's on the record of proceedings, page 99. And she responded to the judge again, I was pregnant in October, and I was told that I was three months pregnant when I took the test. At one point, she said she'd had the pregnancy test done in February. The trial attorney objected and said that wasn't the testimony. I said it was. The judge said I'll play back the record. I said, please do that. And he didn't. If he had, he would have heard what the testimony was at that point. But he chose not to do that. Instead, he started talking again and said that he understood that she'd stopped taking the pill in August or September. He again said that you were pregnant in October. If the judge himself is saying, even at that point in the testimony, that she stopped taking the pill in August or September, how could she have been pregnant seven months in February? Because that would have required pregnancy in late June or early July. You're down to a little under two minutes. Did you want to save some time for rebuttal? Yes, Your Honor. Please. Thank you. Thank you for your argument. We'll hear from the government at this time. Mr. Goldman. Good morning. May it please the Court. Dan Goldman on behalf of the United States. Speak up just a little bit. I will do, Your Honor. This Court should uphold the agency decision and deny the petition for review. This case, as it was noted earlier, is about credibility. In the immigration court, Mrs. Chen had the obligation to come in to bring forth a credible claim for relief. She did not do that. Again, in this court, it's her burden to show, and a higher burden, though, to show that the evidence would compel reversal. She hasn't done that. This case is about credibility. As the immigration judge noted in the decision, there were several instances that gave the immigration judge legitimate concern about her credibility. They're laid out very clearly in the record. Some of the discussion that was earlier in the arguments, what was said, was it corrected, was it not corrected, should the record have been read back, I think sort of obscures the issue. It was Mrs. Chen's obligation to bring forth a credible, clear claim for relief. If the testimony wasn't clear, then she should have corrected it. She had able counsel who asked Can you point in the record to us precisely where it is that she said she first learned, she learned she was pregnant in October 1985? I was thinking that you might want to start the clock. Yeah. I'm sorry. I didn't hear the clock. The clock hadn't started. You've got some extra time. Very well, Your Honor. Don't argue with success. Can you point to us in the record where, in her words, she said, I was pregnant in October 1985? I believe she says that on page 99. She says October 1985, I was pregnant. I was pregnant. How far along in your pregnancy were you? I went to exam, was pregnant for three months. And the I.J. said that she later said February 1986. Can you give us that cite? On page 110, I believe, of the record, Your Honor, she talks about. I'm sorry. I was referring to looking at a different thing. 1985. I don't mean to take up your time searching for it. Maybe you can find it. I'll look for it, Your Honor. I believe on page 106, 107, beginning of February, I went to exam. And it continues on to 107. Doctor told me I was pregnant for three months already. So it's at the bottom of 106, continuing on to 107. At the beginning of February, I went to exam. The doctor told me I was pregnant for three months already. And that's Mrs. Whalen's testimony there is contradictory with the testimony earlier on page 99. And that's, again, it goes to what her obligation was in the immigration court was to present a clear, credible claim for relief. And again, if her testimony wasn't clear, and Mr. Whalen talks about bad questions, more questions should have been asked. When Mr. Whalen was offered the opportunity to redirect, if my recollection serves me, he didn't ask redirected questions. That's the obligation to bring forward a credible, clear claim. And when that's not done, it's essentially too late now to say, well, things weren't clear at the lower court, better questions should have been asked. All those opportunities were there. And if Mrs. Chen didn't take advantage of them, it's a day late and a dollar short now to say, well, we should have asked different questions below, particularly when the evidence supports the immigration judge's conclusion that her credibility was in doubt. And it was also there were questions raised about her demeanor. She consistently had trouble giving a straight, clear answer, a responsive answer. There were several times in the record where the immigration judge says, I'll just make a note that that was a nonresponsive answer. And as the immigration judge said, she had trouble answering questions that weren't straight from her declaration. And the immigration judge took that as a factor weighing against her credibility and appropriately did so. One thing that concerns me in this case, and I understand your argument on her testimonial credibility, but it doesn't appear to me that the immigration judge made any findings on the reliability of the documents she submitted. And absent that, how are we to judge why the immigration judge rejected the documents as not being credible evidence? Due respect, Your Honor, I'm going to answer your question, but I don't think you have to judge that. But we do have some cases that say that you can't use testimonial vagueness and inconsistencies to reject documentary evidence. That, in fact, it's required for the IJ to make some specific findings with respect to the documents on their credibility and the reasons. I think we use the same language, specific cogent reasons for rejecting the documents. All that I can suggest in this case, Your Honor, is it goes back to what her burden was. Okay. Are you saying that, just so I understand your answer to my question before you get into the argument of why it doesn't matter, you're saying you agree that the immigration judge didn't make any adverse credibility findings in the documents, right? That's correct, Your Honor. I mean, I don't see it. I mean, I don't want to take my time again to read through every line, but I don't believe he did. But again, it goes to what her obligation was before the immigration judge. As I understand it, you can correct me if I'm wrong, the documentary evidence that was relevant appears to be, one, a notice informing Chen and her husband that they had to be sterilized, right? Two, a notice explaining that Chen and her husband were fired from the factory they worked at for violating birth control rules. And three, a receipt for payment of a fine for having an extra birth without permission, right? That would seem to be fairly relevant evidence. It would be relevant, Your Honor. But again, it's one part of the decision and one factor to consider. When Mrs. Chen goes before the immigration court, again, her obligation is to present a credible, clear claim for relief. How can she do that? She can do that as she did through her own testimony. She can submit documents. She submitted a declaration as part of her asylum application. Unfortunately, it contradicted some of her testimony. She can do it through documents. She can do it through bringing in other witnesses, which she elected not to do. In this case, the testimony was so, there were so many problems with the credibility based on the testimony, but also connected to the documents, specifically her declaration, that that essentially overwhelmed the rest of her claim. And Your Honor, you're certainly correct. The record does not reflect any specific finding as to the documents. It's the government's position that when the credibility is so much in doubt, as it was here, that the immigration judge is within his discretion to reject her application for relief. Let's assume for the sake of argument that she hadn't testified at all, that she just submitted those three documents. Would that claim be sufficient to sustain a finding? I would want to go back and look at all those documents again. I mean, it was certainly the questions were about her credibility based on her testimony in connection to some of her asylum application. If the only thing that she submitted were documents in favor of her, in favor of her application, it would, presumably, it would be better. But I think that's a different case for a different day, Your Honor. Now, the trouble I'm having are the cases that say you have to consider them independently, and we don't have, I mean, they look pretty strong on their face. And what seems to have a lack of credibility testifying meant justified the rejection of the documents. And our case law says you can't do that. So to me, it seems to me, I accept your argument on, and I analyze that separately as well, on her testimony. It seems to me, if I look at the documents, because the IJ did not give a specific and cogent reason for rejecting the authenticity of the documents and see whether or not they stand on their own. And I'm, I was, the reason I asked my question was to give you an opportunity to say they don't stand on their own and explain to me why. Your Honor, I think my case would certainly be stronger today if the immigration judge had added even just one sentence to that effect. But he didn't. And again, I think it's one part of the determination. If the documents go in, we could ask a hypothetical question. Hypothetically, if the documents came in and were so doubt, doubt, so questionable on their face that the immigration judge didn't address them, but the credibility of the testimony was also as doubtful, the same, this Court should be able to come to the conclusion that the credibility was so bad with regard to testimony that it overwhelmed all of the rest of the evidence, and not just evidence, but all of her efforts to meet her burden to bring a credible claim. Her claim was not credible for all the reasons that were cited. And I do want to address something that was raised earlier by Mrs. Chen's counsel. When he suggests that the immigration judge never addressed the abortions, that's just simply not accurate. He does specifically also with regard to comparing Mrs. Chen's case and Mr. Chen's case. When Mr. Chen says his wife only had one unwanted abortion, and Mrs. Chen says two, that's a problem for Mrs. Chen's credibility, and it does specifically address the question of the abortions. And I think that specifically refutes the argument made by the Petitioner today. And also, I wanted to address the argument that was raised in Petitioner's reply brief, that the testimony from Mr. Chen was not relevant because at the time his case went forward, whether or not there was a forced abortion was not a ground for relief under the law. I think that argument fails for several reasons. First of all, Mr. Chen is the one who brought up whether or not his wife had a forced abortion. There were questions about when he did it, how he did it, but he brought it up. He put that issue into play. Their argument, I think, would be stronger had he not even mentioned it. But once he mentions it, it specifically contradicts Mrs. Chen's testimony. And that's – and that is a huge part of why the immigration judge rejected her claim for relief. Okay. Subject to the Court's questions.  Thank you, Your Honor. Mr. Whelan, you have a couple of minutes for rebuttal, if you'd like to take it. Thank you, Your Honor. I went through the judge's reasons for finding her not credible. He said she did not elaborate or expand on her declaration. He gives us no examples of what he was talking about, none whatsoever. He said that she did not have a – her general demeanor. He gives us no discussion at all of what her demeanor was like. He doesn't say anything about how she answered questions, about her facial movements, her body language, not a single thing for us to judge what he's talking about when he says general demeanor. He says she had lack of detail. There's lots of detail on this. He gives no examples of what he thought she should have provided additional detail for doing. At one point he says that she said that in February, when she went to have the test, that she had been she was told she was pregnant for four months. That does not appear in the transcript. Every single time that she mentioned that she was tested seven times in the testimony, she talks about being tested seven times, and each time she says, I was pregnant three months in October. The judge is wrong when he says that she said it's four months. What about the alleged inconsistency between her testimony and the husband's application? The husband's application at the time, 1992, his application was entirely on sterilization, and the sterilization came because they'd had two children. The fact that she'd had one abortion or two abortions or four abortions was not part of that case at all. The only thing they were talking about was the fact that he'd had, that they'd had two children and they'd been ordered to be sterilized because of that, and he was trying to say that that sterilization was Whatever he was trying to say, he said that she had had a single abortion. That's correct. And at that time He testified that there were two. At that time, he also said Inconsistent, isn't it? Not necessarily, because at that time, he had said that the abortion was not an issue. He didn't even bring the abortion of her up until just at the time of the final hearing, and he said at that point she had mailed him one additional, an additional document which was introduced into evidence. There were no questions asked about the abortion at all. And finally, in the conclusion, Judge Einhorn said that it was the, he accepted the fact she'd had the abortion. He said that she had had an involuntary abortion, that it had been her body that had, whose privacy had been invaded, that she was the one who carried the second child to term, always afraid of being discovered. Judge Einhorn didn't have any questions that she'd had as to that abortion. Okay. Thank you very much for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case in the calendar, which is Xing. Counselor present.
judges: Hawkins, Thomas, Bea